# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| HAROLD McKAY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 3:15 CV 1337 SMY-RJD |
| | ) |
| ILLINOIS DEPARTMENT OF | ) |
| CORRECTIONS, et al., | ) |
| | ) |
| Defendants. | ) |

## **MEMORANDUM AND ORDER**

Before the Court is Defendants Wexford Health Sources, Inc., and Shaliza Odom's Motion for Summary Judgment. (Doc. 32). Plaintiff Harold McKay, formerly an inmate in the custody of the Illinois Department of Corrections at Southwestern Illinois Correctional Center, filed this action alleging violations of his constitutional rights. (Doc. 1). Specifically, Plaintiff has proceeded on a single claim under the Eighth Amendment, which alleges that Defendants acted with deliberate indifference toward his serious medical needs by failing to provide him with dentures. (Doc. 4).

Defendants now move for summary judgment, arguing that the record does not support a claim against Defendants and does not demonstrate deliberately indifferent medical treatment. For the following reasons, Defendants' motion is GRANTED.

### Background

From May 27, 2014 to September 25, 2015, Plaintiff was incarcerated at Southwestern Illinois Correctional Center ("Southwestern"). Defendant Wexford Health Sources, Inc. ("Wexford") contracts with the Department of Corrections ("IDOC") to provide medical services

to inmates and employed the medical personnel at Southwestern. Defendant Sheliza Odom worked as a dental assistant at Southwestern.

The following relevant facts are set forth in Plaintiff's affidavit. (Doc. 36). On May 27, 2014, Plaintiff met with Dr. Elizabeth Brack and discussed Plaintiff's severe gum disease and tooth extractions. Dr. Brack informed Plaintiff that the one-year length of his sentence would allow sufficient time for the necessary medical treatment, including the provision of dentures.

On June 14, 2014, eleven of Plaintiff's teeth were extracted. Plaintiff went to the healthcare unit on July 2, 2014, but received no treatment for gum disease. On October 2, 2014, Plaintiff's teeth were cleaned at the healthcare unit. He was instructed to brush and floss regularly, but received no treatment for gum disease. Plaintiff saw Dr. Brack on seven additional occasions, but received no further treatment for gum disease. On October 8, 2015, following his release from custody, Plaintiff met with a dentist who contradicted Dr. Brack by informing Plaintiff that he did not need any cavities filled and that his teeth were healthy and strong.

According to Dr. Brack's affidavit, the following occurred.[1] (Doc. 33-1 at 1-8). On May 30, 2014, Dr. Brack examined Plaintiff for the first time. She noted the mobility of multiple teeth and severe periodontal disease and recommended the extraction of eleven teeth. She further advised Plaintiff that his dental condition required extensive restorative treatment before Plaintiff could receive dentures. Plaintiff elected for the extraction procedure, which occurred on June 14, 2014.

On July 2, 2014, Dr. Brack examined Plaintiff and informed him he had been placed on a waiting list for restorative treatment. In the absence of an emergency, patients are placed on waiting lists for dental services and treated in the order of their placement on the waiting lists.

---

[1] In conjunction with Dr. Brack's affidavit, Defendants have submitted Plaintiff's medical and dental records. The Court has reviewed the medical records and finds them to be consistent with Dr. Brack's attestation. (Doc. 33-1 at 9-157.)

On October 2, 2014, Plaintiff commenced restorative treatment and underwent a teeth cleaning procedure. Plaintiff's inability to tolerate the pain caused by the procedure resulted in the scheduling of another cleaning appointment. On October 28, 2014, a dental hygienist resumed the teeth cleaning process. The dental hygienist informed Plaintiff that, considering the severity of his dental condition, he may not be a candidate for partial dentures and advised him that partial dentures would only be a possibility if he complied with the instructions regarding dental hygiene.

Plaintiff again saw a dental hygienist on November 4, 2014 to resume the teeth cleaning process. On December 29, 2014, Plaintiff's appointment was cancelled due to Dr. Brack calling in sick. On December 31, 2014, Plaintiff's appointment was cancelled due to a facility lockdown.

On January 30, 2015, Dr. Brack examined Plaintiff and found that the teeth cleaning process had revealed cavities in three teeth. Dr. Brack informed Plaintiff that the next step before he could receive partial dentures was to fill the cavities. She further advised him that his overall health was not in danger and placed Plaintiff on the waiting list for fillings. On March 30, 2015, Dr. Brack met with Plaintiff at his request and reminded him that he was on the waiting list for fillings and that he could not have partial dentures until his fillings were completed.

On April 30, 2015, Dr. Brack filled the cavities in the two teeth that were on the right side of Plaintiff's mouth. She declined to fill the cavities in all three teeth because the cavity-filling process requires numbing parts of the mouth, the third tooth was on the left side of the mouth and numbing both sides of the mouth at the same time is generally inappropriate as it would interfere with a patient's ability to eat and drink.

On June 10, 2015 and August 18, 2015, Plaintiff asked when he would receive additional restorative treatment and partial dentures. He was informed that he was on the waiting list for his final filling and that partial dentures would be requested upon completion of the final filling.

During each appointment with Plaintiff, Dr. Brack assessed whether Plaintiff's dental condition affected his general ability to function, including his ability eat, drink, or sleep, but found no clinical signs of any negative effect and that Plaintiff's weight remained constant throughout the duration of his time at Southwestern. Plaintiff never complained to Dr. Brack regarding such issues. Dr. Brack's decision to complete restorative treatment prior to requesting partial dentures for Plaintiff was based on her medical judgment.

## Discussion

Pursuant to Federal Rule of Civil Procedure 56(a), the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When ruling on a motion for summary judgment, the Court shall "examine the record and all reasonable inferences in the light most favorable to the non-moving party." *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014). Summary judgment must be denied "if a material issue of fact exists that would allow a reasonable jury to find in favor of the non-moving party." *Id.*

Plaintiff alleges that, in violation of the Eighth Amendment, Defendants acted with deliberate indifference toward his serious medical needs by failing to provide him with partial dentures. The Eighth Amendment protects prisoners from cruel and unusual punishment. U.S. Const., Amend. VIII; *see also Berry v. Peterman*, 604 F.3d 435 (7th Cir. 2010). Prison conditions that deprive inmates of basic human needs, such as inadequate nutrition, health or safety, may constitute cruel and unusual punishment. *Rhodes v. Chapman*, 452 U.S. 337, 346

(1981); *James v. Milwaukee County*, 956 F.2d 696, 699 (7th Cir. 1992). Prison officials violate the Eighth Amendment's prohibition against cruel and unusual punishment when their conduct demonstrates deliberate indifference to the serious medical needs of an inmate. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997).

To establish deliberate indifference to a medical condition, an inmate must show a condition that is sufficiently serious (objective component) and that an official acted with a sufficiently culpable state of mind in failing to address the condition (subjective component). *Id.* "A serious medical condition is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Whether an injury is serious enough is a very fact specific inquiry – seriousness may be shown if an ordinary doctor opined an injury warranted treatment, if an injury significantly impacted an individual's daily activities, or if an injury caused chronic or substantial pain, among other things. *Gutierrez*, 111 F.3d at 1373.

As to the subjective component, an official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Jackson v. Ill. Medi-Car, Inc.*, 300 F.3d 760, 765 (7th Cir. 2002). If an official reasonably responds to a risk, even if harm was not averted, deliberate indifference does not exist. *Id.* A claim for medical negligence does not amount to deliberate indifference. *Gutierrez*, 111 F.3d at 1369.

Defendants first argue that Plaintiff mistakenly identified Defendant Odom as his dentist instead of Dr. Brack. In the Complaint, Plaintiff named Defendant Odom as a defendant and identified her as a dentist. (Doc. 1). However, Plaintiff makes no argument that Defendant

5

Odom, the dental assistant, acted with deliberate indifference towards Plaintiff's serious medical needs. Moreover, the record, which sparsely mentions Defendant Odom, contains no support for such an argument. Accordingly, Defendants' motion is GRANTED with respect to Plaintiff's claims against Defendant Odom.

Defendants also argue that Plaintiff has failed to establish a claim against Defendant Wexford. A corporation "cannot be held liable under § 1983 on a respondeat superior theory." *Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005). Rather, a corporation can be held liable only for "an express policy that, when enforced, causes a constitutional deprivation," *Id.*, or "a widespread practice that, although not authorized by written law or express [corporate] policy, is so permanent and well settled as to constitute a custom or usage with the force of law." *McTigue v. City of Chicago*, 60 F.3d 381, 382 (7th Cir. 1995).

Here, the record is devoid of any evidence from which a fact-finder could reasonably conclude that Wexford's policies or practices affected Plaintiff's dental treatment or otherwise acted as the moving force behind any constitutional violation. Accordingly, Defendants' motion is GRANTED with respect to Plaintiff's claims against Defendant Wexford.

Although an analysis of Dr. Brack's conduct is not necessary to resolve the instant motion, in the interest of judicial expediency, the Court also concludes that the evidence would not support a deliberate indifference claim against Dr. Brack. Plaintiff alleges that, as a result of not having partial dentures, he could only chew with one side of mouth. However, the record establishes that Plaintiff's weight remained constant throughout his time at Southwestern and that Plaintiff never complained that the ability to chew on only one side of his mouth affected his health. Plaintiff's claim stands in contrast with other deliberate indifference cases in which the absence of dentures significantly affected an inmate's ability to eat and resulted in pain, bleeding

gums and malnutrition. *See Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001) (collecting cases).

Additionally, the record demonstrates that Dr. Brack acted in accordance with her medical judgment when she insisted on the completion of restorative treatment and fillings prior to requesting partial dentures. Further, the sole material factual dispute relates to the conversation between Dr. Brack and Plaintiff at the initial examination. Even assuming that Dr. Brack informed Plaintiff that the one-year length of his sentence allowed sufficient time for Plaintiff to receive partial dentures, the record contains no evidence to suggest that the statement was an intentional misrepresentation and no evidence to suggest that Dr. Brack acted with deliberate indifference to Plaintiff's safety or health in any other respect.

As a final matter, two Jane Doe defendants remain in the case. In the Screening Order, Plaintiff was given the opportunity to amend his Complaint to identify the Jane Doe defendants. (Doc. 4 at 5). However, Plaintiff has not identified the Jane Doe defendants, despite having nearly two years to do so. Accordingly, Plaintiff's claims against these defendants are DISMISSED with prejudice.

**Conclusion**

For the foregoing reasons, Defendants Shaliza Odom and Wexford Health Sources, Inc.'s Motion for Summary Judgment (Doc. 32) is GRANTED, and the Jane Doe defendants are DISMISSED from this action. Because no claims remain, the Clerk of Court is DIRECTED to enter judgment against Plaintiff Harold McKay and in favor of Defendants Shaliza Odom and Wexford Health Sources, Inc.

**IT IS SO ORDERED.**

**DATED: November 20, 2017**

                                            **/s/ Staci M. Yandle**
                                            **STACI M. YANDLE**
                                            **UNITED STATES DISTRICT JUDGE**